**UNITED STATES, Appellee,**

v.

**Specialist Devara D. BIRDSONG, 491–70–7579, United States Army, Appellant.**

**ACMR 9202493.**

U.S. Army Court of Military Review.

Aug. 3, 1994.

For Appellant: Captain Beth G. Pacella, JAGC, Captain Roy H. Hewitt, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Glenn L. Kirschner, JAGC, Captain John G. Giovannelli, JAGC, Captain Kenneth G. Wilson, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

RUSSELL, Judge:

A general court-martial, consisting of officer and enlisted members, convicted the appellant, contrary to her pleas, of larceny and forgery (three specifications) in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 923 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1.

This case is before the court for initial review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. The appellant asserts, inter alia, that the military judge erred by failing to instruct on the "claim of right" defense to larceny. We agree.

### I.

Prior to their marriage, the appellant and Sergeant (SGT) Robert Walker had a daugh-ter, J'quia Monet Walker. In April 1989, the appellant reenlisted in the Army following a break in service. At the time she reentered active duty, she was required to give up custody of J'quia because she was a single mother. She placed her daughter in the custody of SGT Walker's aunt. The appellant and SGT Walker were married in September 1989, and soon experienced marital problems. Consequently, SGT Walker and the appellant accepted orders to different Army installations. Sergeant Walker was assigned to Germany and the appellant was assigned to Fort Stewart, Georgia. J'quia returned to the appellant's full-time custody in April of 1991 and remained under the appellant's care until the day this case came to trial.

Paragraph 2–4 of Army Regulation 608–99, Family Support, Child Custody, and Paternity (4 November 1985), required SGT Walker to pay $113.00 per month to the appellant for their daughter's support, beginning the month she returned to the appellant's custody. However, his only contribution to J'quia's support after that time was a single payment of $100.00. The appellant testified that she believed that J'quia was entitled to payment of $376.00 per month, the amount of SGT Walker's full BAQ at the with-dependent rate. She testified that she believed that the payment was owed to J'quia because it was her understanding that SGT Walker received the allowance solely for the benefit of J'quia as his dependent. The appellant also testified that, in addition to his child support obligations, SGT Walker owed her $1500.00.

The first two forgery specifications[1] and the larceny charge stem from the financial dispute between the appellant and her estranged husband. The testimony of the appellant and SGT Walker diverge on the issue of who placed SGT Walker's signature on the allotment forms. The appellant steadfastly denied at trial that she forged his signature,

---

1. The third specification of forgery evolved from a property dispute between the appellant and her former roommate. The appellant admitted that she had falsely entered the roommate's signature to shipping documents in order to obtain possession of certain household goods from the room-mate's shipping agent. However, she also testified that part of the property (a bedroom set) was owned by her, and that the roommate had given her "verbal" authorization to pick up all of the goods on her behalf.

claiming that SGT Walker had sent the forms to her signed. Sergeant Walker testified that he did not sign the forms or otherwise authorize the allotments. In any event, it is uncontroverted that the appellant caused the allotments to be submitted to U.S. Army finance personnel, who promptly diverted money from SGT Walker's pay account to J'quia in the amount of $347.00 per month (an amount equal to SGT Walker's full BAQ at the with-dependent rate), and to the appellant in the amount of $550.00 per month. The appellant received a total of $1852.00 before both allotments were stopped by SGT Walker.

■ During an Article 39(a), 10 U.S.C. § 839(a) session on instructions, the military judge noted generally that he did not see "any affirmative defenses other than denial basically."[2] Trial defense counsel did not request a claim of right or mistake of fact instruction regarding the Article 121 charge. Nor did the defense counsel object when the military judge stated that he did not see any affirmative defenses. After counsel had argued their respective positions, the military judge gave detailed instructions to the court members. He did not instruct the members on the defenses of claim of right or mistake of fact in respect to the larceny charge. When the instructions were given, defense counsel voiced no objection to the instructions given and did not ask for additional instructions.

## II.

### A.

■ When evidence adduced at trial reasonably raises a defense, the military judge has the responsibility, sua sponte, to deliver appropriate instructions to the court members with respect thereto. *United States v. Sellers,* 33 M.J. 364 (C.M.A.1991);

*United States v. Steinruck,* 11 M.J. 322, 324 (C.M.A.1981). In deciding whether an instruction on a defense is required, the question is whether some evidence was presented to which the members might attach credit. *See* Rule for Courts–Martial 916(b) [hereinafter R.C.M.]; R.C.M. 920(e) discussion. The evidence need not be compelling or convincing beyond a reasonable doubt. *Sellers,* 33 M.J. at 368; *United States v. Jackson,* 12 M.J. 163, 166–67 (C.M.A.1981). Any doubt whether the evidence is sufficient to require an instruction should be resolved in favor of the accused. *Steinruck,* 11 M.J. at 324 (citing *United States v. Staten,* 6 M.J. 275 (C.M.A.1979)). Most importantly, the accused's right to the instruction on a special defense is not waived by a mere failure to object or to request appropriate instructions. *United States v. McMonagle,* 38 M.J. 53, 58 (C.M.A.1993) (citing *United States v. Taylor,* 26 M.J. 127, 129 (C.M.A.1988) (Everett, C.J.)).[3] When a judge omits entirely an instruction on a complete defense, the appropriate review is for harmlessness; thus, we cannot affirm appellant's conviction if there is a "reasonable possibility" the judge's error in failing to instruct on a defense "might have contributed to the conviction." *United States v. Barnes,* 39 M.J. 230, 233 (C.M.A. 1994) (citing *United States v. Palacios,* 37 M.J. 366, 368 (C.M.A.1993)).

### B.

■ Though R.C.M. 916 does not include the defense of claim of right, we have acknowledged it as a "special situation" defense that was developed by the Court of Military Appeals beginning with *United States v. Smith,* 2 U.S.C.M.A. 312, 8 C.M.R. 112 (1953). *United States v. Gunter,* 37 M.J. 781, 782 (A.C.M.R.1993). The claim of right defense applies in those cases where the accused takes a sum certain of money legiti-

---

2. The military judge's observation is accurate insofar as the forgery of Sergeant Walker's signature was concerned. The appellant's "claim of right" as a creditor or custodial parent does not excuse the use of fraud in the inducement to obtain delinquent payments from third party fiduciaries of the victim such as paymasters or banking institutions. *See United States v. Kelley,* 39 M.J. 1011, 1013 n. 3 (A.C.M.R.1994).

3. However, the right to an instruction is waived if the defense counsel, as a deliberate trial tactic, affirmatively indicates his satisfaction and agreement with the determination of the military judge not to give additional instructions. *United States v. Pasha,* 24 M.J. 87 (C.M.A.1987); *United States v. Mundy,* 2 U.S.C.M.A. 500, 9 C.M.R. 130 (1953).

**610**

mately owed to her. *United States v. Smith,* 14 M.J. 68 (C.M.A.1982) (honest belief made plea to robbery improvident). Moreover, R.C.M. 916(j) recognizes the defense of mistake of fact, which has been used in the same manner as the claim of right defense. That defense applies to a larceny charge where the accused has a mistaken but subjectively honest belief that she has a superior possessory interest[4] in the property. *See United States v. Fell,* 33 M.J. 628, 630 (A.C.M.R. 1991); *United States v. Cunningham,* 14 M.J. 539, 541 (A.C.M.R.1982), *rev'd on other grounds,* 15 M.J. 282 (C.M.A.1983). Thus, if a valid claim of right or honest mistake of fact exists, one cannot be convicted of a violation of Article 121. *See United States v. Kachougian,* 7 U.S.C.M.A. 150, 21 C.M.R. 276 (1956). Moreover, the defenses of claim of right and mistake of fact are available even if the taking was from the possession of the debtor or the fiduciary. *See United States v. Smith,* 14 M.J. 68 (C.M.A.1982) (robbery from a person who owed money to the accused's debtor); *United States v. Kelley,* 39 M.J. 1011 (A.C.M.R.1994) (forged check to bank); *United States v. Gunter,* 37 M.J. 781 (A.C.M.R.1993) (forged check drawn on commercial bank). This is so because such a taking is without the specific intent to deprive a person with a superior possessory right.

### III.

▇ We are satisfied that the testimony of the appellant was sufficient to suggest that she honestly believed that SGT Walker owed her $1500.00 and, under Army regulations, owed J'quia $376.00 per month, thereby giving rise to a claim of right defense. The general theory of the defense was that the appellant believed that she was entitled to the money diverted by the forged allotments because it constituted only repayment of a debt owed to her and support payments due monthly to her daughter, on whose behalf

she was acting. Accordingly, we hold that the military judge erred when he failed to instruct the court members on the claim of right defense. Specifically, the military judge should have instructed the court members that the accused should be acquitted of larceny if the government failed to prove beyond a reasonable doubt that the appellant did *not* honestly believe that she had a valid right to take an amount of money equal to the personal debt owed to her and the child support owed to the daughter living under her care.

▇ Moreover, given the defense's theory that SGT Walker owed appellant the money, we are not persuaded that the error was harmless. None of the elements of larceny were in dispute and, absent the instruction, the members were required to find the appellant guilty. Under the circumstances, the court members were prevented from considering the appellant's sole defense, thereby depriving her of a fair trial. *See Barnes,* 39 M.J. at 233; *United States v. Van Syoc,* 36 M.J. 461, 465 (C.M.A.1993); *McMonagle,* 38 M.J. at 61; *see generally United States v. Mance,* 26 M.J. 244, 254–257 (C.M.A.1988).

We have considered the remaining assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty of Charge II and its Specification are set aside. In the interest of judicial economy, Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms the sentence.[5]

Senior Judge WERNER concurs.

---

4. The "owner" is the person who, at the time of the taking, has the superior right to possession of the property in light of all the conflicting interests. Manual for Courts–Martial, United States, 1984, Part IV, para. 46c(1)(c)(ii).

5. The military judge instructed the members that Charge II and its Specification was to be considered multiplicious with Specifications 1 and 2 of Charge I for sentencing. In his instruction he stated: "[I]n determining what would be an appropriate sentence in this case, you must consider in essence you are dealing only with Charge I and its specifications, the forgery offenses, not the larceny."

**LANE, Judge, concurring:**

I concur with my brethren that the evidence reasonably raised an affirmative defense and that the military judge's failure to instruct thereon was error. I also concur that the error was prejudicial, that is, not harmless, and that the findings of guilty of Charge II and its Specification cannot be affirmed.

I write separately to express my concern for the recent holding in *United States v. Barnes*, 39 M.J. 230 (C.M.A.1994), that, in cases of this nature, the "appropriate [standard of] review is ... harmlessness." *Id.* at 231 n. 1. First, I agree with Judge Wiss that the majority's reliance on *United States v. Palacios*, 37 M.J. 366 (C.M.A.1993) is misplaced. *Barnes*, 39 M.J. at 234 n. *. More important, I believe that the Court of Military Appeals is retreating from the proper rule that it only recently arrived at, that failure to instruct on a reasonably raised affirmative defense is prejudicial error. *United States v. McMonagle*, 38 M.J. 53, 61 (C.M.A.1993). In my opinion, any failure to instruct on an element of an offense or on a defense reasonably raised by the evidence, absent an affirmative waiver, is prejudicial per se as it goes to the heart of the determination of innocence or guilt. Thus, there is no room for testing for harmlessness. *United States v. Mance*, 26 M.J. 244, 255 (C.M.A. 1988) (Everett, C.J.).