**UNITED STATES**

v.

**Ronald J. SPYCHALA, 087–28–6495, Hospital Corpsman Chief (E–7), U.S. Navy.**

**NMCM 92 02025.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 April 1992.

Decided 6 June 1994.

648

LT L.M. Higdon, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before LARSON, C.J., WELCH, Senior Judge, and McLAUGHLIN, J.

McLAUGHLIN, Judge:

On 28 April 1992, the appellant, contrary to his pleas, was convicted of sodomy and indecent assault on his then 3–year-old step-grandson, L, at a general court-martial with members.[1] L was 4 years old when he testified. The appellant has submitted 15 assignments of error.[2] Because we find merit in

1. Violations of Arts. 125 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 925 and 934. The appellant pled guilty to other violations of Art. 134 regarding firearms-shipment offenses under 18 U.S.C. § 922. He was sentenced to a bad-conduct discharge, confinement for 5 years, forfeiture of $500.00 pay per month for 60 months, and reduction to E–1. The convening authority approved the sentence, but as a matter of clemency, suspended confinement in excess of 3 years for a period of 24 months from the date of trial.

2. I. THE EVIDENCE FOR THE CHARGES OF FORCIBLE SODOMY AND INDECENT ACTS WAS LEGALLY AND FACTUALLY INSUFFICIENT FOR PROOF BEYOND A REASONABLE DOUBT.

II. THE M.R.E. 404(b) PRIOR ACTS OF MOLESTATION WERE INADMISSIBLE BECAUSE THEY DID NOT PROVE INTENT, MOTIVE OR PLAN AND BECAUSE THEIR PROBATIVE VALUE WAS OUTWEIGHED BY THEIR PREJUDICIAL EFFECT.

III. THE GOVERNMENT'S PSYCHOLOGIST EXPERT WITNESS TESTIFIED BEYOND THE SCOPE OF EXPERT TESTIMONY BY GIVING HER OPINION ON THE ULTIMATE ISSUE OF APPELLANT'S INNOCENCE OR GUILT.

IV. THE MILITARY JUDGE ERRED BY NOT SUA SPONTE GIVING THE MEMBERS A LIMITING INSTRUCTION WHEN THE GOVERNMENT'S EXPERT WITNESS DISCUSSED THREE ADDITIONAL ACTS OF MISCONDUCT WHICH HAD BEEN RULED AS INADMISSIBLE.

V. THE THREE–YEAR–OLD CHILD'S STATEMENT, "PAPA PLAYS WITH MY PEE–PEE" WAS IMPROPERLY ADMITTED UNDER M.R.E. 803(2) EXCITED UTTERANCE.

VI. THE DISCOVERY RULES WERE VIOLATED WHEN THE COUNSELING RECORDS OF R[] H[] WERE NOT PROVIDED TO THE DEFENSE PER THEIR REQUEST.

VII. THE MOTION FOR DEFENSE CONSULTANTS WAS IMPROPERLY DENIED BY THE MILITARY JUDGE.

VIII. THE MOTION FOR SODIUM AMYTAL "TRUTH SERUM" ENHANCED INTERVIEW OF APPELLANT WAS IMPROPERLY DENIED.

IX. THIS CASE WAS IMPROPERLY REFERRED TO A GENERAL COURT–MARTIAL WHERE THE INVESTIGATING OFFICER WAS NOT IMPARTIAL SINCE HE AND THE PROSECUTOR WERE DIRECTLY SUPERVISED BY THE SAME OFFICER.

X. THE MILITARY JUDGE IMPROPERLY DENIED THE CHALLENGE FOR CAUSE AGAINST CDR M[], WHO STATED BIAS BY BELIEVING A PSYCHIATRIST MORE THAN ANY OTHER WITNESS AND BELIEVING THE STATEMENT, "ONCE A CHILD MOLESTER, ALWAYS A CHILD MOLESTER."

XI. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

XII. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

XIII. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS

Assignment of Error V, we need not address Assignments of Error I, II, III, IV, VI, VII, VIII, and X.

## ADMISSIBILITY OF HEARSAY

■ The only evidence supporting the allegation under Charge I, sodomy, is a purported statement made by the victim to his Uncle R.

The appellant claims that the military judge erred when he ruled that that statement was admissible as an excited utterance because the stress, if ever there was any, had dissipated. We agree.

The statement in question, as related by Uncle R, was made by L to his Uncle R while they were together in Uncle R's car after a time of play and wrestling at a local park.[3] It was made over 30 days after the last opportunity for the appellant to have physical contact with L.

■ According to Uncle R's testimony, on 12 May 1991, Uncle R was doing some paperwork in the driver's seat of his car while L was eating a sandwich in his car seat in the front-passenger side. L had an uneaten piece of sandwich that he had molded into a rectangle in his crotch area. L had only his lap on which to eat the sandwich. According to Uncle R, "he [L] was fiddling his fingers on ... either side of this ... piece of bread." Record at 62. Uncle R's testimony continued:

Q. What happened next?

A. Then he ... said, "Stop it. Stop it, papa." I asked him what he meant and he said, "When someone plays with your pee-pee, you tell them to stop it and stop it now." At that point, I asked if ... with the playing, what did he mean by the

playing, if he'd meant the way we had played outside before we had gotten in the ... car, and he said, "No. Papa uses his mouth."

Q. What was L[ ]'s—can you describe how he was acting? What was his demeanor when he was talking to you?

A. He ... was almost matter of fact; although, he ... was emphatically said [sic], "Stop it." But he was pretty much matter of fact.

Q. Was he laughing? Crying?

A. No. He ... was reserved but he was ... focussing more on ... the phrase, "Stop it. Stop it, papa."

Record at 63. L never repeated this statement at court-martial, or corroborated that it had been said initially. At no point in the in-court testimony, or the Article 32, UCMJ, investigation testimony, does L say the appellant touched his penis with his mouth. At trial, L was asked by the trial counsel:

Q. L[ ], now, this is real important. Do you remember how papa played with your pee-pee?

TC: The witness was shaking his head no. (TC)Q. L[ ], do you remember if your papa used his mouth to play with your pee-pee?

A. No, he didn't.

Q. He did not? Did he use his hands?

A. Uh, no.

Q. What did he use?

A. I don't know.

Record at 319. Based on L's lack of memory concerning his testimony at the Article 32, UCMJ, investigation, the defense counsel entered L's Article 32, UCMJ, testimony without Government objection.[4] Def.Ex.B. As

---

JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)
  XIV. THIS COURT HAS NO POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)
  XV. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES PETITIONER'S [sic] RIGHT TO AN IMPARTIAL JUDICIAL FORUM.

3. Uncle R was the appellant's stepson. L was the son of one of the appellant's stepdaughters. L lived with his grandmother and the appellant, but spent considerable time with his Uncle R, who intended to adopt him. L called his Uncle R "Daddy," his step-grandfather "Papa," and his grandmother "Super grandma" or "Honey."

4. The basis of the offer was Mil.R.Evid. 804(a)(3), which allows into evidence former testimony of a witness who, because of lack of memory, is unavailable to testify at the court-martial. The foundation is rather curious. The defense estab-

to the sodomy charge, this prior testimony casts no greater light on what the Government alleges the appellant did to L than the in-court testimony. L was asked by the Government counsel:

> Q. Did your papa touch your pee pee?
> A. Yes.
>
> .     .     .     .     .     .
>
> Q. What did he touch you with?
> A. I don't know.

Def.Ex.B at 6. The military judge ruled that L's statement to his Uncle R at the park, i.e., "Stop it. Stop it, papa." and L's responses to Uncle R's questioning about how papa played with his penis were admissible as excited utterances under Military Rule of Evidence (Mil.R.Evid.) 803(2).[5] Our review of the trial court's decision is to determine whether he abused his discretion in admitting this testimony. *United States v. Pearson*, 33 M.J. 913, 915 (A.F.C.M.R.1991) (citing *United States v. LeMere*, 22 M.J. 61 (C.M.A.1986)). For the reasons stated below, we conclude that the military judge abused his discretion. Abuse of discretion does not imply improper motive, willful purpose, or intentional wrong. *United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987). "An abuse of discretion arises in cases in which the judge was controlled by some error of law or where the order, based upon factual, as distinguished from legal, conclusions, is without evidentiary support." *Id.* at 63 (citations omitted).

■ Because the appellant's case comes to us for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we are not bound by the military judge's essential findings. *United States v. Cole*, 31 M.J. 270 (C.M.A.1990); *United States v. Jones*, 34 M.J. 899, 905 (N.M.C.M.R.1992); *United States v. Ruhling*, 28 M.J. 586, 592 n. 8 (N.M.C.M.R.1988), *petition denied*, 29 M.J. 289 (C.M.A.1989). "Nonetheless, we are generally inclined to

give them deference." *Jones*, 34 M.J. at 905 (citations omitted). The essential facts needed for a determination of the admissibility of L's statement at the park are provided by Uncle R's testimony, and they are uncontroverted. We conclude that the finding that the statements by L in the park were excited utterances under Mil.R.Evid. 803(2) is not supported by the evidence.

■ Although passage of time alone does not require a certain outcome on this issue, we note that a passage of time of greater than 30 days is well beyond the outer limits of statements previously found admissible as excited utterances. *United States v. Arnold*, 25 M.J. 129 (C.M.A.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *accord United States v. Grant*, 38 M.J. 684 n. 6 (A.F.C.M.R.1993) (noting Annotation, *Time Element As Affecting Admissibility Of Statement Or Complaint Made By Victim Of Sex Crime As Res Gestae, Spontaneous Exclamation, Or Excited Utterance*, 89 A.L.R.3d 102 (1979)); *United States v. Pearson*, 33 M.J. 913 (A.F.C.M.R.1991). When determining whether an out-of-court statement is admissible as an exception to the hearsay rule under the excited utterance exception, spontaneity is the key factor rather than the degree of excitement. *United States v. Fink*, 32 M.J. 987, 990 (A.C.M.R. 1991), but the statement must be made contemporaneously with the excitement or stress caused by the event or condition. *Arnold*, 25 M.J. at 132. L's responses to Uncle R's questions were not contemporaneous or spontaneous in that sense. We conclude that the statements made by L at the park, in a reserved, matter-of-fact manner were, at most, made as a result of recall not as a result of the event. Our assessment of the circumstances surrounding L's statement at the park, and his responses to Uncle R's

---

lished that L had no memory of his Art. 32, UCMJ, investigation testimony. Record at 407. The Art. 32, UCMJ, investigation testimony shows L had no memory of any type of events such as those charged. The rule would appear to require that L have no memory of the actual events surrounding the allegations, and that his Art. 32, UCMJ, testimony would provide percipient insights to aid the fact-finder regarding the events, not a repeat of "I don't remember."

**5.** The excited utterance exception to hearsay states:

> *(2) Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

questioning, convinces us that they were reflective and not made under the stress or excitement of events from the past. *United States v. LeMere*, 22 M.J. 61, 68 (C.M.A.1986) ("we believe that Mil.R.Evid. 803(2) cannot readily be applied to a situation where a child calmly answers questions asked by her mother, instead of emotionally volunteering information.")

## RESIDUAL HEARSAY

■ Because of Uncle R's status as a prior victim of the appellant, himself,[6] and his frame of mind regarding the appellant, we find no equivalent circumstantial guarantees of trustworthiness that would allow these purported statements of L at the park to be admissible under Mil.R.Evid. 803(24) or 804(b)(5), the so-called Residual Hearsay Rule. The military judge did not address this avenue of possible admissibility in his ruling, although the counsel at trial did brief and orally argue the theory.

## EFFECT ON OTHER CHARGES

■ In this intense and emotional trial, the key ingredient to successful prosecution of the sodomy charge was the admissibility and believability of Uncle R's testimony regarding the statement he says L made at the park on 12 May 1991, because that was *the* evidence of sexual abuse in the form of sodomy. All other indecent acts would necessarily have to flow from the inference and ultimate conclusion that, because the appellant sodomized L and had sexually abused other young children in his household, the touchings of L's penis were criminal. In the absence of that feeble straw, we cannot be certain that this evidence was harmless beyond a reasonable doubt vis-a-vis the indecent acts convictions. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985). Because of the circumstances surrounding these allegations, the military judge was not required to give instructions limiting the use of this evidence of sodomy. Thus, a "spillover effect" was inevitable.

In *United States v. Palacios*, 37 M.J. 366 (C.M.A.1993), a case of child sodomy and indecent acts, a videotape was erroneously admitted at trial, and the Court of Military Review dismissed the sodomy charge and ordered a rehearing on sentence as to the indecent acts. The Court of Military Review found that the admission of the videotape, which contained evidence of other indecent acts, was harmless error vis-a-vis the indecent acts. The U.S. Court of Military Appeals disagreed and stated that the proper analysis should not be whether there is legally sufficient evidence, excluding the evidence complained of, but rather "whether there is a reasonable possibility that the evidence complained of *might have contributed* to the conviction." *Palacios*, 37 M.J. at 368 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)) (emphasis in original). The Court stated further that:

If the tape was considered by the members as evidence of indecent acts, "[t]his would violate one of the most basic precepts of American jurisprudence: that an accused must be convicted based on evidence of the crime before the court, not on evidence of a general criminal disposition." *United States v. Hogan*, 20 M.J. 71, 73 (CMA 1985) *citing United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir.), *cert. denied*, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939).

*Palacios*, 37 M.J. at 368.

As in *Palacios*, "we cannot be assured that the erroneously-admitted testimony did not affect the conviction of indecent acts." 37 M.J. at 369. This inadmissible evidence was extremely damaging to the appellant. Without it, the specter that the appellant would be convicted of sexual assault for any touchings, *because he did it before*, looms large.

Assignments of Error IX and XI–XV are without merit. *United States v. Mitchell*, 39 M.J. 131 (C.M.A.1994); *Weiss v. United States*, —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

The findings of guilty of the specification under Charge I and Specification 1 of Charge II are set aside. Charge I, and its sole

---

**6.** Uncle R testified that he was repeatedly sexually abused, including fellatio, by appellant when he was a youngster.

supporting specification, is dismissed. The remaining findings of guilty are affirmed. The sentence is set aside. The record is returned to the Judge Advocate General for remand to the same or a different convening authority who may order a rehearing.

Chief Judge LARSON and Senior Judge WELCH concur.